UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

JUDED TELFORT,

                  Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**
18-CR-636 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:** On August 27, 2019, Juded Telfort ("Defendant"), pled guilty to Count Four (4) of a five-count Indictment. Count Four (4) charges Defendant with Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1). The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Juded Telfort is hereby sentenced to twenty-four (24) months of incarceration, to be followed by one (1) year of supervised release with special conditions, and a $100.00 special assessment.

## BACKGROUND

On August 27, 2019, Juded Telfort ("Defendant"), pled guilty to Count Four (4) of a five-count Indictment. Count Four (4) charges Defendant with Aggravated Identity Theft in violation of 18 U.S.C.§ 1028A(a)(1). The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.    Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described," in the Guidelines. 18 U.S.C. §

1

3553(c)(2). The court must also "state[] with specificity," its reasons for so departing, "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Proceeding chronologically, the Court addresses first the history and characteristics of Defendant and then the nature and circumstances of the offense.

i. History and Characteristics of the Defendant

Defendant, now 26 years old, was born on August 7, 1994 in Miami, Florida to the non-marital union of Juded Telfort and Niva Telfort. PSR ¶ 26. Defendant's parents reside together in Miami Gardens, Florida and are the owners of a tax preparation business, a bail bonds business, a DNA Testing Lab and a Real Estate Brokerage Firm. *Id.*; Def. Sentencing Memorandum ("Def. Mem."), ECF No. 51 at 4. Defendant shares a close relationship with his parents, both of whom are aware of his conviction for the instant offense and remain supportive. PSR ¶ 26.

Defendant has one sibling, Salina Telfort, who resides in Los Angeles, California. *Id.* ¶ 27. Salina Telfort is a college student and enjoys good health. *Id.* She is aware of Defendant's conviction for the instant offense and remains supportive. *Id.* Defendant has four paternal half-siblings: Britney Ocias, who resides in Miami and is employed by the Transportation Security Administration; Dion Bienme, who resides in Miami and is employed by the United Parcel Service and Taco Bell; Julisa Telfort, who resides in North Miami and is employed as a hair stylist; and Moses Telfort, who resides in Davie, Florida and is a full time college student. *Id.* ¶ 28. Defendant has one maternal half sibling, Juniva Dolceme, who resides in Miami and is employed as a hair stylist and a cashier at a local candy store. *Id.* ¶ 29. Defendant shares close relationships with Britney Ocias, Dion Bienme, Moses Telfort, and Juniva Dolceme—they are aware of his arrest and conviction for the instant offense and remain supportive. *Id.* ¶¶ 28–29.

Defendant was reared by both parents under lower to lower-middle class economic circumstances. *Id.* ¶ 30. Defendant described to Probation a good childhood free from abuse, with loving parents who did their best to provide for him and his siblings. *Id.* Defendant's parents were very involved in his extracurricular activities and also managed a rap group the Defendant and his friends were a part of when in middle school. *Id.*

Defendant graduated from Everglades High School in Mirimar, Florida in 2013. *Id.* ¶ 39. From 2018 to 2019, Defendant attended Lynn University in Boca Raton, Florida and studied marketing. *Id.* Defense counsel's sentencing memorandum notes Defendant's education is on pause while he awaits the outcome of the instant offense and the containment of COVID-19. Def. Mem. at 1.

Defendant has been in a romantic relationship with Vanessa Ajebon since 2018, and the couple were recently married. *Id.* Ms. Ajebon is employed part-time as a registered nurse and is

also a full-time student enrolled in a nurse practitioner program. *Id.* She is also the owner of a small beauty salon and co-owner with the Defendant of several business, described in more detail below. *Id.* Ms. Ajebon is aware of Defendant's conviction for the instant offense and remains supportive of him. *Id.*

Defendant has worked a number of jobs since he graduated from high school. PSR ¶¶ 41–49. In 2014 and 2015, Defendant was employed as an assistant manager at Kids Foot Locker, a retail store in Miami, Florida. *Id.* ¶ 48. In 2016, Defendant was employed as a ground operator for Spirit Airlines at the Ft. Lauderdale Airport, and as a customer service representative. *Id.* ¶¶ 47–48. In 2017, Defendant worked as a sales associate at Zara, a clothing store in Miami, Florida. *Id.* ¶ 45. Defendant and his wife are also part owners of several businesses together including an advertising and marketing company, a clothing line, a music recording studio, and a beauty services company. PSR ¶¶ 41–44. Additionally, Defendant has attempted a career in music, primarily as a rap artist. *Id.* ¶ 49. During periods of unemployment or underemployment, Defendant has been financially supported by his parents. *Id.*

Defendant enjoys good physical and emotional health. *Id.* ¶¶ 35–35. Defendant reported that he first smoked marijuana at the age of 18 and used the drug twice per week with friends until July 2018, one month prior to his arrest for the instant offense. *Id.* ¶ 36.

The instant offense is Defendant's second criminal conviction. In 2018, he was convicted of driving with an expired driver's license and fined $337.00. *Id.* ¶ 18.

    ii.    <u>The Nature and Circumstances of the Offense</u>

In January 2018, the New York State Department of Labor ("NYSDOL") authorities began investigating suspicious commonalities among unemployment claims submitted over a one-month period beginning in December 2017. PSR ¶ 8. The claims utilized personal

4

identifying information ("PII") of different, real individuals, but each claim had similar claimant information, such as listing "Miami" as the mother's maiden name. *Id.* Additionally, many of these persons were not unemployed. *Id.*

Approximately half of the victims, and employers for whom they worked, were in the Eastern District of New York. PSR ¶ 9. Between approximately January 10, 2018 and February 27, 2018, video surveillance from multiple locations recorded Defendant on at least eight instances using debit cards or reloadable cards associated with accounts connected to the fraudulent claims to withdraw money from ATMs or to make purchases. Indictment, ECF No. 14 ¶ 6. Some of the mailing addresses listed on the fraudulent claims included homes listed for sale by the same real estate company that employed Defendant's mother, who was a real estate agent. PSR ¶ 9.

Over the course of the investigation, law enforcement authorities determined that Defendant and others had submitted approximately 86 fraudulent claims—using other persons' PII without their permission, including names, Social Security Numbers, and dates of birth— between December 2017 and March 2018. PSR ¶ 9. In total, the intended loss was approximately $823,992.00. PSR ¶ 10. Of the fraudulent claims submitted, Defendant obtained approximately $13,587.00 in unemployment insurance funds. PSR ¶¶ 10, 12.

In August 2018, law enforcement authorities conducted a car stop of Defendant in Florida. Gov't Sentencing Memorandum ("Gov't Mem.") at 2, ECF No. 60. Defendant possessed $640 dollars, a plastic credit card reader and a letter from the NYSDOL addressed to one of the victims. *Id.* On November 27, 2018, a Grand Jury in Brooklyn charged Defendant with one count of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A(a)(1), and related charges connected to the fraudulent scheme. PSR ¶ 1.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly. It seeks to deter Defendant, and others, from further criminal activity, from disregarding U.S. law, and from engaging in illicit activity.

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

On August 27, 2019, Defendant pled guilty to Count Four (4) of a five-count Indictment. Count Four (4) of the Indictment charges Defendant with Aggravated Identity Theft in violation of 18 U.S.C.§ 1028A(a)(1). Defendant faces a mandatory term of imprisonment of two years. *See* U.S.C.§ 1028A(a)(1). Defendant also faces a maximum term of supervised release of one year, *id*. § 3583(b)(3); a maximum fine of $250,000.00, *id*. § 3571(b); and a special assessment of $100.00 *id*. § 3013. Defendant is statutorily ineligible for probation. *Id*. § 1028A(b)(1).

**D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses**

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the

applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A). The parties agree on the applicable Guidelines range calculation applicable to Defendant.

Count Four (4) of the Indictment charges Defendant with Aggravated Identity Theft in violation of 18 U.S.C.§ 1028A(a)(1). The applicable Guideline for a violation of 18 U.S.C. § 1028A(a)(1) is USSG § 2B1.6. The guideline sentence is the term of imprisonment required by statute, which is two years. Chapter Three (3) and Chapter Four (4) of the Guidelines Manual pertaining to Adjustments and Criminal History do not apply to this count of conviction. USSG § 2B1.6(a). All parties agree that Defendant is subject to a mandatory two-year custodial sentence. Defense counsel requests this Court delay the time to surrender until such time that the COVID-19 infection rates in the prisons are non-existent. Def. Mem. at 10.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not pertinent to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this memorandum and order, and in consideration of the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

The seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). The provisions of the

Mandatory Victim Restitution Act of 1996 apply to this Title 18 offense. The victim of this offense is the New York State Department of Labor ("NYSDOL"), who dispersed $13,587.00 to Defendant in unemployment insurance benefit funds that he was otherwise not entitled to receive. On May 26, 2021, the Court entered an order of restitution requiring Defendant to pay $13,587.00 to the NYSDOL.

## CONCLUSION

A sentence of twenty-four (24) months of incarceration, to be followed by one (1) year of supervised release (with special conditions), and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report, and all addendum barring any errors contained therein.

**SO ORDERED.**

_____s/ WFK_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 22, 2021
      Brooklyn, New York